## WARE *v.* McCALL.

Under the evidence submitted, it was erroneous for the court to direct a verdict for the plaintiff.

Submitted March 16, — Decided April 10, 1900.

Complaint for land. Before Judge Henry. Floyd superior court. January term, 1899.

*Wright & Ewing,* for plaintiff in error.
*Max Meyerhardt* and *H. M. Wright,* contra.

FISH, J. D. T. McCall brought complaint against Mrs. M. S. Ware, to recover all of the east half of lot of land No. 116, in the 4th district and 4th section of Floyd county; except 48 acres in the shape of a parallelogram off of the east side of the east half of said lot. The defendant filed an equitable plea. At the conclusion of the evidence for both sides, the court di-

rected a verdict in favor of the plaintiff; to which ruling the defendant excepted. The evidence for the defendant was, in brief, as follows: She purchased the lot of land from one Turner, eleven or twelve years before the trial, and took from him a bond for titles to the same. She had paid part of the purchase-money, and the plaintiff had paid the balance for her, amounting to $150.00. She was otherwise indebted to the plaintiff, and the title to the land was conveyed to him to secure all of her indebtedness to him, which amounted to $240.00. Plaintiff agreed to take sixty acres of the land in payment of what she owed him, and to convey to her the balance of the lot. He was to take thirty acres of cleared land at $5.00 an acre, and thirty acres of uncleared land at $3.00 per acre. Forty-eight acres of the land that the plaintiff was to take were to be in the shape of a parallelogram off of the east side of the lot, and twelve acres in the shape of a parallelogram were to be taken from the south side of the remaining tract. In February, 1896, to carry out such agreement, plaintiff conveyed to defendant, for the stated consideration of $150.00, "part of lot No. 116, containing one hundred acres more or less, being the west half of said lot, except twelve acres in the southwest corner." After the execution of this deed, the plaintiff and the defendant's agent ran off and measured forty-eight acres in the shape of a parallelogram off the east side of the lot, and twelve acres in the same shape off of the south side of the remaining portion of the lot; and plaintiff fenced and went into possession of the forty-eight acres, took possession of the twelve acres, and exchanged them with one Payne for twelve acres of Payne's land, which lay adjacent to that of plaintiff. The west line of the forty-eight acres ran within a short distance of the defendant's dwelling-house, and, at the time of the running of the line by plaintiff and defendant's agent, plaintiff expressed himself as gratified that the line did not take in the defendant's dwelling. The dwelling alone was worth from three hundred to three hundred and fifty dollars, which was more than defendant owed the plaintiff. In the fall of 1896, upon a survey of the whole lot, it was found to contain two hundred and five and three quarters acres; and the suit was brought in De-

cember of that year.   Defendant's husband was her agent, and transacted the whole business in reference to the land with the plaintiff.   Her husband could not read, but the deed from the plaintiff to the defendant was read over to him, and, at the time, he understood its contents.   When the deed was executed, he stated to the plaintiff that his wife ought to have got more land, and he thought she ought to have got more, but he did not know then that the lot contained more than 160 acres. It was the understanding that the lot contained 160 acres, the regular size, and that the plaintiff, when the deed was made, was retaining 60 acres and the defendant was getting the balance, viz., 100 acres.   The only evidence submitted by the plaintiff was a deed to lot 116 from one McArver to the plaintiff, dated January 28, 1896, consideration $150.00.

We think it very clear, under this evidence, that the court erred in directing a verdict for the plaintiff; for if the jury had believed the evidence submitted in behalf of the defendant, she would have been entitled to have the deed from the plaintiff to her reformed as prayed for.   This evidence strongly tended to support the defendant's equitable plea, in which she prayed for a reformation of the deed.   If McCall simply held the title to the land to secure the payment of the money which the defendant owed him, and agreed with her to take in payment of her indebtedness to him the sixty acres of land which he actually received, we do not see how he, in equity and good conscience, could be entitled to get forty-odd acres of the land more than the amount he agreed to accept in payment of his debt, merely because it happened that the lot, title to which he held as security, contained forty-five and three-fourths acres more than the parties at the time the settlement was made thought it did. If he agreed to take thirty acres of uncleared land at $3.00 per acre, and thirty acres of cleared land at $5.00 an acre, in payment of what the defendant owed him, and actually got the identical land and the exact amount thereof which he was to accept for his claim, it would seem that his debt was paid, and that in equity the defendant would be entitled to all of the remaining portion of the lot, however much it might be, and could have the

deed from the plaintiff to herself so reformed as to put the legal title to all except the particular sixty acres in her.

*Judgment reversed. All the Justices concurring.*